UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case Number: 19-62039-CIV-MARTINEZ/SNOW

NICOLE RAMOS,

    Plaintiff,

v.

DELPHI BEHAVIORAL HEALTH GROUP, LLC,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiff's Partial Motion for Summary Judgment ("Plaintiff's Motion"), (ECF No. 76), and Defendant's Motion for Summary Judgment, ("Defendant's Motion"), (ECF No. 78). The Court held a hearing on the motions on March 8, 2021. After careful consideration of both motions, the parties' oral arguments, and the pertinent portions of the record, the Court finds that Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED**.

### I. BACKGROUND

Plaintiff, Nicole Ramos ("Plaintiff"), was employed by Defendant, Delphi Behavioral Health Group ("Delphi" or "Defendant"), as a Revenue Cycle Manager from April 2, 2018 through June 28, 2019. (Pl.'s Statement of Undisputed Facts ("SOUF") ¶ 1, ECF No. 77; Def.'s Statement of Material Facts ("SOMF") ¶ 2, ECF No. 79). Delphi is a network of drug and alcohol addiction treatment facilities with fourteen facilities across the country. (Def.'s SOMF ¶¶ 1–2). While employed at Delphi, Plaintiff served as the only Revenue Cycle Manager for all of Delphi's facilities. (*Id.* ¶ 2). As a result of serious health conditions, Plaintiff requested leave under the

Family Medical Leave Act ("FMLA") in May 2019. (*Id.* ¶ 4; Pl.'s SOUF ¶ 9). Defendant approved this leave, and Plaintiff was out of the office on FMLA leave from May 20, 2019 through June 10, 2019, at which time she returned to work. (Pl.'s SOUF ¶ 10; Def.'s SOMF ¶ 6). When she returned, Plaintiff advised Defendant that she would require additional time off from work for her follow-up doctors' appointments. (Pl.'s SOUF ¶ 11; Def.'s SOMF ¶ 6). Plaintiff took additional FMLA leave on June 21, 2019, June 24, 2019, and June 27, 2019 to attend doctors' appointments. (Pl.'s SOUF ¶ 11).

On June 24, 2019, Plaintiff complained to Delphi's Human Resources ("HR") department about one of her subordinates, Stanley Laguerre ("Laguerre"), regarding misconduct in the workplace. (Def.'s SOMF ¶ 8). Following Plaintiff's complaint, HR began an investigation into Laguerre. (*Id.*) During the course of this investigation, it came to light via text messages that Laguerre provided to Delphi that, in 2018, Plaintiff had invited Laguerre to her house and to smoke marijuana together. (*Id.* ¶ 9). The text messages also revealed that Plaintiff had brought a vaping pen with her to work and had given it to Laguerre in the parking lot. (*Id.*) In late June 2019, Delphi's HR representative interviewed Plaintiff in connection with the investigation. (*Id.* ¶ 11). During the interview, Plaintiff stated that her and Laguerre never spoke about where each other lived and that they never went out socially. (*See id.*; Pl.'s Resp. Def.'s RFAs, at 3, ECF No. 79-6).

After conducting the investigation, Michael Borkowski, who served as Plaintiff's supervisor, made the decision to terminate Plaintiff. (Def.'s SOMF ¶ 14). Plaintiff was terminated from her employment on June 28, 2019. (Pl.'s SOUF ¶ 12). On that day, a meeting was held with Plaintiff and Jackie Ayers, Delphi's Director of Human Resources, where Plaintiff was told that she was being terminated because she lacked appropriate boundaries with her staff, she had

2

inappropriate relationships with her staff, and she had invited Laguerre to her house. (Pl.'s Resp. Def.'s SOMF ¶ 29, ECF No. 118). Plaintiff was given a termination letter which stated that she was being terminated because the investigation revealed "unprofessional behavior and actions on [her] part that are in direct violation of company policies and standards, specifically as it relates to Professionalism and Ethical Conduct, Harassment, and Standards of Conduct." (Termination Letter, ECF No. 119-7).

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, an issue is material if it may affect the outcome of the suit under governing law. *Id.*

At the summary judgment stage, "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant. However, an inference based on speculation and conjecture is not reasonable." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988).

## III. ANALYSIS

The Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 (1994), provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period

for one or more of the following: . . . (D) Because of serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.§ 2612(a)(1); *see Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1204 (11th Cir. 2001). The FMLA also affords employees "the right following leave 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to an equivalent position." *Strickland*, 239 F.3d 1199 (quoting 29 U.S.C. § 2614(a)(1)). To protect these rights, the FMLA creates two causes of action: retaliation and interference.

Plaintiff brought suit against Defendant for both retaliation and interference with her FMLA rights. (*See generally* Compl.). Both parties move for summary judgment on these claims. Plaintiff also moves for summary judgment on Defendant's affirmative defenses.[1]

### A. Interference[2]

To state a claim for interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353–54 (11th Cir. 2000). Plaintiff is not required to allege that Defendant *intentionally* interfered with her benefits. *See Hulbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 129 (11th Cir. 2006). The employer's motives are irrelevant in this analysis. *Id.* These rights, however, are not absolute. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010).

---

[1] Because the Court finds that summary judgment in favor of Defendant is warranted on both counts, it need not address Plaintiff's motion for summary judgment on the affirmative defenses.

[2] Defendant moves for summary judgment on Plaintiff's interference claim as being duplicative of the retaliation claim. (Def.'s Mot. Summ. J., at 3-4). The FMLA creates two types of claims—retaliation and interference—which Plaintiff is entitled to raise regardless of whether both claims are premised on the same factual allegations. The Court will therefore address both claims on the merits.

Defendant moves for summary judgment on the interference claim on the basis that Plaintiff was not denied a substantive right because Defendant approved all the FMLA leave that Plaintiff requested. (Def.'s Mot. Summ. J., at 4). Plaintiff, on the other hand, contends that, by virtue of her termination in June 2019, she was denied her substantive right to use further FMLA leave for additional medical appointments that were scheduled in July 2019. (Pl.'s Mot. Summ. J., at 5). Plaintiff also asserts, for the first time in her response to Defendant's Motion for Summary Judgment, that she was denied her substantive right to FMLA leave when she was required to work from home while she was on leave. (Pl.'s Resp. Mot. Summ. J., at 4). Finally, she appears to argue—also for the first time—that Defendant interfered with her right to reinstatement when it "refus[ed] to restore Plaintiff to her position on June 28, 2019 following her . . . FMLA leave on June 27, 2019[.]" (Pl.'s Resp. Mot. Summ. J., at 5). None of these reasons are availing.

First, the Court will not consider Plaintiff's new theories raised for the first time in response to Defendant's Motion for Summary Judgment. A theory of liability not asserted in the complaint and raised for the first time in response to a motion for summary judgment need not be considered by the court. *See Mahgoub v. Miami-Dade Comty. Coll.*, No. 05-11520, 2006 WL 952278, at *2 (11th Cir. April 13, 2006) (affirming a grant of summary judgment and finding, inter alia, that a theory of liability that was not asserted in the complaint was improperly before the Court); *Moise v. Miami-Dade Cty.*, No 17-20993-CIV, 2018 WL 4445111, at *12 (S.D. Fla. Aug. 22, 2018) (rejecting the plaintiff's impermissible assertion of new facts and theories because they were brought for the first time in his response to the defendant's motion for summary judgment). The proper vehicle to assert a new theory of liability is to seek leave to amend the complaint. *Id.* In response to Defendant's Motion for Summary Judgment, Plaintiff argues that Defendant interfered with her right to FMLA leave because, despite having been approved for leave in May 2019,

5

Defendant required her to work from home during her FMLA leave. (Pl.'s Resp. Mot. Summ. J., at 4–5). Similarly, for the first time in her Response Defendant's Motion for Summary Judgment, Plaintiff asserts that, as a result of her termination, she was denied her right to reinstatement to her position after she took intermittent leave on June 27, 2019. (*Id.* at 5). These theories of liability were not raised in Plaintiff's Complaint, nor has Plaintiff sought leave to amend the complaint to include them. (*See generally* Compl., ECF No. 1). Therefore, these theories are improperly before the Court and will not be considered.[3] *See Mahgoub*, 2006 WL 952278, at *2.

Further, the undisputed record shows that Defendant approved all of Plaintiff's requests for FMLA leave, including all additional intermittent leave to attend doctor's appointments. (*See* Pl.'s SOUF ¶¶ 9, 11; Def.'s SOMF ¶ 6; Pl.'s Resp. Def's SOMF ¶ 6). Plaintiff herself admits that Defendant approved all the FMLA leave she requested for her additional medical appointments. (Ramos Depo., at 31:9–19, ECF No. 98-4; Pl.'s Resp. Def.'s RFA, at 2). The mere fact that Plaintiff had future appointments scheduled in July 2019 and was discharged before then does not amount to interference, in particular, where the reasons for discharge were wholly unrelated to her FMLA leave. *See Krutzig*, 602 F.3d at 1236.

Indeed, "if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to FMLA leave, the employer is not liable" for failing to reinstate the employee after the employee has taken FMLA leave. *Strickland*, 239 F.3d at 1208. The Eleventh Circuit in *Krutzig* extended this analysis to the right to commence FMLA leave. 602 F.3d at 1236. "[A]s

---

[3] When questioned as to why Plaintiff failed to raise these theories in her complaint, Plaintiff's counsel responded that this information came to light throughout the course of discovery. This, however, does not explain Plaintiff's detrimental omission. Whether Plaintiff was asked to work from home while she was on FMLA leave is information that was undoubtedly within her personal knowledge at the time the complaint was filed. At the very least, even if it became known to Plaintiff through discovery, Plaintiff should have amended her complaint when it was discovered, yet she did not do so. *See Gilmore v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.")

with the FMLA right to reinstatement, the FMLA right to non-interference with the commencement of leave is not absolute, and if a dismissal would have occurred regardless of the request for FMLA leave, an employee may be dismissed," even if it prevents her from exercising her right to take leave or to reinstatement. *Id.*

Defendant has demonstrated that Plaintiff was terminated for reasons wholly unrelated to her FMLA leave. The undisputed record reflects that, following the investigation into Stanley Laguerre, it was revealed that 1) Plaintiff fraternized with Laguerre outside of work; (2) she smoked marijuana with Laguerre at her house; and 3) she brought a vaping pen to work, which Borkowski understood was used for smoking marijuana. (*See* Def.'s SOMF ¶¶ 9–10; Text Messages, ECF No. 79-5). Defendant also believed that Plaintiff had an inappropriate romantic relationship with Laguerre and that she harassed him. (*See* Pl.'s Reply SOMF ¶ 29, ECF No. 124). Moreover, when confronted about her relationship with Laguerre in connection with the ongoing internal investigation, Plaintiff lied about her having "hung out" with Laguerre outside of work and whether her and Laguerre had spoken about where each other lived. (*See* Pl.'s Resp. Def.'s RFA, at 3; Borkowski Depo., at 69:5–20, ECF No. 100-1). Plaintiff's conduct was in direct violation of Defendant's policies and code of conduct and Borkowski considered it in his determination to terminate Plaintiff. (*See generally* Employee Handbook, ECF No. 98-10; Borkowski Depo., at 59:3–62:12, ECF No. 100-1). These reasons were also discussed internally between Borkowski and HR prior to Plaintiff's termination, whether in writing or during phone conferences. (*Cf.* Borkowski Depo., at 69:1–20, ECF No. 100-1; Chat J. Ayers and M. Borkowski, ECF No. 117-3). Notably, Plaintiff admits that she engaged in these activities. (Pl.'s Resp. Def.'s RFA, at 2–3). Having admitted the truth of the reasons for her discharge, Plaintiff "cannot show that the reasons . . . are pretextual[.]" *Yoosun Han v. Emory Univ.*, 658 Fed. App'x 543, 548 (11th

Cir. 2016) (citing *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 13333 (11th Cir. 1998)). Accordingly, even taking the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Plaintiff's termination constituted interference.

Therefore, Plaintiff's motion for partial summary judgment is denied with respect to the interference claim and Defendant's motion is granted.

### B. Retaliation

"[T]o succeed on a retaliation claim, an employee must demonstrate that his employer *intentionally* discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207 (emphasis added). Unlike an interference claim, an employee "must show through direct or circumstantial evidence that her employer's actions were 'motivated by an impermissible retaliatory or discriminatory animus.'" *Yoosun Han*, 658 Fed. App'x at 547 (quoting *Strickland*, 239 F.3d at 1207). Direct evidence is that which reflects a retaliatory attitude correlating to the retaliation complained of by the employee without the need of inference. *Yoosun Han*, 658 Fed. App'x at 547.

Absent such direct evidence of the employer's intent, courts apply the Title VII discrimination framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 791, 798 (11th Cir. 2000). Under this framework, an employee must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Strickland*, 239 F.3d at 1207 (citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000)). If the plaintiff makes such a prima facie case, the burden then shifts to the employer to articulate a legitimate reason for the adverse action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer articulates these reasons, the

burden shifts back to the plaintiff to show that the employer's reasons for the adverse action are pretextual. *Id.* at 804. Plaintiff can prove pretext if she shows "that the reason was false and that the action was actually motivated by retaliation." *Yoosun Han*, 658 Fed. App'x at 548 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Here, Plaintiff has not shown direct evidence that she was fired because she took FMLA leave. Taking the record as a whole, there is no direct evidence that reflects a retaliatory attitude or discriminatory animus. In fact, Plaintiff admits that Borkowski was never "angry" about her taking FMLA leave and was instead "understanding" about her medical condition. (*See id.* at 47:21–23; 48:22–49:14). Plaintiff also admits that, during her discharge meeting with HR, her FMLA leave was never mentioned. (*See* ECF No. 98-4, at 47:1–48:21; Def.'s SOMF ¶ 18; Pl.'s Resp. Def.'s SOMF ¶ 18). The mere fact that Borkowski expressed to the HR department that Plaintiff's continued absences following her return from FMLA leave were impacting the billing and collections department is insufficient evidence to show that Defendant intentionally terminated Plaintiff due to her taking leave. (*See* Borkowski Depo., 47:10–48:9, ECF No. 117-4). It is understandable and reasonable for a company to plan for an employee's potentially prolonged absence from her duties, especially in this case where Plaintiff held a management role in the billing department of a network of fourteen drug and alcohol treatment facilities across the country.

Having Plaintiff failed to show direct evidence of retaliation, the Court must apply the *McDonnell* framework. Defendant only disputes the third element, namely, that there is a causal connection between Plaintiff taking FMLA leave and her termination. (Def.'s Mot. Summ. J., at 5). While Plaintiff establishes the temporal proximity of her termination to her protected activity of taking FMLA leave, this does not create a genuine issue of fact on the question of causation. Plaintiff's termination occurred as a result of facts uncovered through an internal investigation of

another employee; an investigation which was commenced by Plaintiff, no less. Defendant has articulated legitimate reasons for Plaintiff's termination which were discovered during the internal investigation against Laguerre. (*See* Borkowski Depo., at 69:5–20, ECF No. 100-1; Def.'s SOMF ¶¶ 9–10; Termination Letter; ECF No. 117-7). As such, no reasonable jury could find that a causal connection exists between Plaintiff's termination and her taking FMLA leave. *See Thomas v. Dolgencorp, LLC*, 645 Fed. App'x 948, 953 (11th Cir. 2016) (finding that temporal proximity did not create a genuine issue of fact on causation where the employer discovered past professional transgressions during the employee's absence).

Even assuming that Plaintiff could prove a prima facie case of retaliation, Plaintiff has failed to demonstrate that the legitimate reasons proffered by Plaintiff were pretextual. In support of her pretext argument, Plaintiff contends that there are inconsistencies and contradictions in the reasons given for her termination. (Pl.'s Resp. Def.'s Mot. Summ. J., at 8). According to Plaintiff, the fact that Plaintiff's drug use was not mentioned during her termination meeting or in her termination letter reflects inconsistencies and contradictions in the Defendant's reasons for termination. (*Id.* at 11). These arguments fail.

Although Defendant's failure to mention Plaintiff's drug use during her termination meeting or letter "may have caused a jury to entertain the possibility of an alternate explanation for [Plaintiff's discharge, Plaintiff] offered no evidence that would have allowed a jury to find that there *was* such an alternate explanation." *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1244 (11th Cir. 2010). Plaintiff has not presented any evidence suggesting that Defendant was motivated by a retaliatory animus, nor did she offer any evidence showing that Defendant's reasons were bad ones. *See id.* Tellingly, Plaintiff was not the only employee that was terminated as a result of the investigation. At least two other employees who had *not* taken FMLA leave were

discharged on the same day as Plaintiff based on the findings of the internal investigation. (*See* McDonald Termination Letter, ECF No. 117-8; Laguerre Termination Letter, ECF No. 117-9). Moreover, as outlined in detail above, Plaintiff has not negated the truth of the actions that led to her termination. "An employee cannot show that the reasons . . . are pretextual when she admits their truth," and Plaintiff has admitted that she engaged in the actions that led to her termination. *Yoosun Han*, 658 Fed. App'x at 548 (internal citations and alterations omitted).

Accordingly, Plaintiff's motion for partial summary judgment on the retaliation claim is denied and Defendant's motion for summary judgment is granted.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that

1. Plaintiff's Partial Motion for Summary Judgment. (ECF No. 76) is **DENIED**.

2. Defendant's Motion for Summary Judgment, (ECF No. 78), is **GRANTED**.

3. A final judgment shall be entered separately.

4. This case is **CLOSED** and all pending motions are **DENIED** as **MOOT**.

DONE and ORDERED in Chambers at Miami, Florida this 15th day of March, 2021.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Snow
All counsel of record